MIAMI EXPORTING COMPANY v. THE HEIRS, ETC., OF J. HALLEY, DECEASED.

*Scire facias* v. heirs and terre-tenants to make lands liable for the payment of decedent's debts.

A debtor dies after judgment against him, subsisting as a lien upon his real estate. The administrator makes a sale, that for irregularity passes no title. The judgment creditor may proceed, by *scire facias*, against the heirs and purchasers in possession, to revive the judgment, and to have execution awarded against the lands.

5

IN 1814 the plaintiff recovered judgment against Joseph Halley and William H. Hopkins, for one thousand five hundred and sixty-three dollars and twenty-eight cents, in the court of common pleas of the county of Hamilton. Halley died in 1816, and administration was granted to David S. Halley, who has no assets from which the judgment can be satisfied. In August, 1823, the judgment was revived against Hopkins as the survivor of Halley, and Hopkins had an execution issued returnable to the December term following, which was returned "no goods, chattels, lands, or tenements of the said Hopkins."

The *scire facias* avers that the judgment remains unsatisfied; that the time allowed for the administrator to settle Halley's estate has expired; that Hopkins has nothing from which the amount of the judgment can be made; and that in *1814, when this judgment was obtained against Halley and Hopkins, Halley was seized of certain lands which were cast upon his heirs by his death, and who with certain terre-tenants are made defendants, and the lands sought to be charged with execution in satisfaction of this judgment.

P. Turpin, one of the terre-tenants, has plead that he is seized of the lands by *legal* title, acquired after the plaintiff's judgment had become dormant, to wit: on May 7, 1822.

2. That after the death of Halley, and the grant of administration to David S. Halley, in 1817, the administrator obtained an order to sell the real estate of Josiah Halley; and, in pursuance thereof, sold the lands in question to Joseph Ruffner, whereby the premises are discharged from said judgment.

There is a third plea, substantially like the second, but with this addition, that in confirmation of the sale to Ruffner, under the order of court, on July 12, 1817, the administrator executed a deed to Ruffner, *in fee*, whereby the said lands became discharged of the said claim.

The plaintiff has replied, taking issue on all the facts set up in the special pleas.

V. WORTHINGTON, for the plaintiff.

STORER and HAMMOND, for the defendant.

Opinion of the court, by Judge WOOD:

This cause is submitted to the court in the place of the jury, and

is to be determined as the evidence shall be found to sustain or not to sustain the issues made by the parties. The defendant has the affirmative; the *onus probandi* is with him, and if the issue made by the replication to either of the pleas is found 'for him, there is an end to the plaintiff's case.

The proof he offers is an entry on the minutes of common pleas of Hamilton county, made on December 6, 1816, as follows: " On petition and exhibition of the administrators of the estate of Josiah Halley deceased, praying an order for sale of real estate, · personal estate being insufficient to satisfy debts due from the estate, court grant the petition, and order a writ to issue agreeably to law, and appoint Ichabod B. *Miller, Stephen B. Davis, **[13** and Nathan Hatfield, commissioners or appraisers."

This is the only order made by the court of common pleas in relation to the sale of this property. Under it, the clerk issued his precept to the administrator, dated December 10, 1816, to sell the land. The commissioners were sworn, and appraised the land at three thousand dollars. On January 30, 1817, it was sold by the administrator, and this return made: " By virtue of a special order granted by the honorable judges of the court of common pleas, in and for the county of Hamilton and State of Ohio, I sold on January 30, 1817, the property set forth and described in said order, to wit: one moiety of two hundred and fourteen and one-half acres of land, in Anderson and Columbia townships, county and state aforesaid. The aforesaid moiety was sold agreeably to previous notice, given according to law—sold with the incumbrance of a judgment in favor of the Miami Exporting Company —sold under the supposed amount of principal unpaid of eight hundred dollars, and the interest and costs thereon, and the widow's right of dower, on a credit of ten, twenty, and thirty months, for nineteen hundred dollars."

The defendant also offers in evidence the record of the administrators' deed to Ruffner for the land sold, dated July 12, 1817, but which is executed in the presence of but *one* witness.

To the evidence so offered, the plaintiff objects, and insists that the order made by the court of common pleas is an order to *appraise* and not *to sell* the land, and that no order for a sale could be made until the appraisal was *first* made and returned. There is certainly force in the argument, and the same point was so decided in the case of the Lessee of Goforth *v.* Longworth, 4 Ohio, 130.

The sale, however, in that case was made under the statute of February 10, 1810, section 32 of which provides, that the court shall appoint three disinterested men to "view the land, tenements, or hereditaments so to be sold, and return to court, under oath, a statement of the value thereof, *after which the court shall direct the executor or executors, administrator or administrators, to proceed to sell,*" etc.

The sale, in this case, was made under the statute of January 25, 1816, which enacts that the court shall appoint three disinterested men to view the premises, etc., and return to court a statement of the value of the remainder of such *lands, etc.; and the court shall direct the executor or executors, administrator or administrators, to proceed to sell, etc. The principal difference in these two statutes is, that the words, "*after which the court shall direct,*" etc., in the former, are left out of the latter statute. The practice is believed, however, to have been generally the same under both, and agreeably with the decision in Goforth's Lessee *v.* Longworth. The court of common pleas, on the return of the appraisal, have not unfrequently refused to grant an order to sell, because the appraisal has not been made, in all respects, in conformity with the law. Unless the appraisal is *first* made and returned, costs might be greatly accumulated by a subsequent sale, and all the proceedings, at last, set aside, because of a defect in the appraisal. Besides, the statute provides that so much of the real estate only should be sold as should be found necessary for the payment of the debts against the estate. The provision clearly contemplates an appraisal to be first made and returned; for without it, the court have not the facts to enable them to determine whether *all,* or a *part,* of the real estate must be sold, to liquidate the demands against the estate. It does not appear to us that any alteration was intended to be made in the statute of 1816 in this respect; and if a sale was required by the act of 1810 to be ordered by the court, *after the appraisal was returned,* we can see no reason why it is not necessary under the latter statute.

It is not important, however, that this question should be decided, as another point made determines the case. The *legal title* is not vested in the purchaser at an administrator's sale, until the lands sold are conveyed by deed *duly executed.* It must be *signed* and *sealed* by the grantor; and such signing and sealing must be attested by *two witnesses,* who are by law required to *sign their*

names to such attestation. The deed of the administrator to Ruffner is defective; there is but the attestation of one witness. The deed, therefore, conveyed no legal title to Ruffner, and Ruffner could convey none to Pultney, nor Pultney to Turpin.

The first issue then made, that Turpin is seized and possessed of the lands by legal title, is not sustained by the deed offered in evidence. It does not conduce to prove this issue, and should be rejected.

The second issue is not proved. The lands were not sold on an order to sell the real estate, as set forth in the second *place. [15 There was no such order, and the lands were not discharged from liability to satisfy such judgment.

The third issue is not proved. The deed offered in evidence to prove it, is rejected for the want of another witness. It follows, consequently, that all the issues are found for the plaintiff. As against Turpin, the lands must be chargeable with the plaintiff's demand, and such appears to us to be the justice as well as the law of this case. The lands were bid in by Ruffner, with a knowledge of, and on the express condition, that they were to be subject to the plaintiff's claim, and such is the language of the deed to Ruffner; and it must be supposed that Pultney, who purchased of Ruffner, and Turpin, who bought of Pultney, had examined Ruffner's title, and had full knowledge of the restriction contained in the administrator's deed.